QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (SBN 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel.: (650) 801-5000

*Attorneys for Plaintiffs JUUL Labs, Inc.
and VMR Products LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUUL Labs, Inc. and VMR Products LLC, | CIVIL CASE NO. 2:25-cv-9331 |
| Plaintiffs, | **COMPLAINT FOR PATENT** |
| vs. | **INFRINGEMENT** |
| Glas, Inc. and Glas, LLC | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1

## I.    INTRODUCTION

1.    Plaintiffs JUUL Labs, Inc. ("JLI") and VMR Products LLC ("VMR") (collectively "Plaintiffs"), by and through their undersigned counsel, respectfully file this civil action for patent infringement of two (2) United States Patent Nos. 11,134,722 ("the '722 patent") and 11,606,981 ("the '981 patent"), collectively referred to as the "Asserted Patents," against Defendants Glas, Inc. and Glas, LLC (collectively, "Glas" or "Defendants") arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.  A true and correct copy of each Asserted Patent is attached to this Complaint as Exhibits Q and S, respectively.  Each of the Asserted Patents is owned by VMR, which is a wholly owned subsidiary of JLI.

2.    As discussed in Section II of this Complaint, JLI was founded in 2007 with the goal of developing a less harmful alternative to traditional combustible cigarettes.  Through years of effort across product design, engineering, and scientific research, and over a billion dollars invested domestically, JLI accomplished that goal by developing technology that revolutionized a category of vaporizing products known as electronic nicotine delivery system ("ENDS") products.

3.    As part of JLI's 2020 applications to the FDA, for example, JLI submitted over 110 scientific studies in support of its submissions regarding the JUUL System. Following the FDA's rigorous evaluations of the data, the FDA has decided that a marketing granted order ("MGO") for the JUUL System was "appropriate for the protection of public health[.]" *See, e.g.*, https://www.accessdata.fda.gov/static/searchtobacco/juul/MRKT_ORDR_LTR_M ultiple_STNs_JUL2025_Redacted.pdf (accessed August 7, 2025).

4.    VMR was an early innovator of insertable cartridge or "pod-based" vaporizer products.  JLI acquired the company and its intellectual property in October 2018.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.      While JLI welcomes fair competition in its mission to switch adult smokers from combustible cigarettes while addressing underage use, JLI is compelled to take this action to prevent Defendants from continuing to sell products that infringe on JLI's foundational patented technology.  JLI has previously filed five International Trade Commission patent cases and related district court complaints in the past seven years to stop the unlawful sale and importation of infringing vaporizer products.  In each of the four completed ITC Investigations, the Commission found a violation and issued remedial orders.  *Certain Electronic Nicotine Delivery Systems and Components Thereof*, Inv. No. 337-TA-1139; *Certain Cartridges for Electronic Nicotine Delivery Systems and Components Thereof*, Inv. No. 337-TA-1141; *Certain Vaporizer Cartridges and Components Thereof*, Inv. No. 337-TA-1211; and *Certain Vaporizer Devices, Cartridges Used Therewith*, *and Components Thereof*, Inv. No. 337-TA-1368.

6.      Defendants' products are another example of this pattern of infringement on JLI's intellectual property asserted in this action. As discussed in Sections II.B and VI, the Defendants' products are substantially similar in overall structural design and elemental makeup to that of JLI's products and literally infringe the Asserted Patents.

7.      This Complaint is based on Defendants' unlawful infringement of the Asserted Patents, including one or more of at least the following claims:

| Asserted Patent | Claims Asserted Against Defendants (independent claims in bold) |
|---|---|
| U.S. Patent No. 11,134,722 | **1**, 3, 5, 7-9, **10**, 11-14, **15**, and 16-21 |
| U.S. Patent No. 11,606,981 | **1**, 2, 5, 6, 8, **9**, 10, 11, **13**, 14-16, **17**, and 18 |

## II.    THE PARTIES

### A.    Plaintiffs

8.    JUUL Labs, Inc. is a privately held corporation organized and existing under the laws of the state of Delaware, with its principal place of business as of the date of the initiation of this proceeding at 1000 F Street NW Washington, D.C. 20004.

9.    VMR Products LLC is a privately held corporation organized and existing under the laws of the state of Florida, with its principal place of business as of the date of the initiation of this proceeding at 1000 F Street NW Washington, D.C. 20004.  VMR Products LLC is a wholly owned subsidiary of JUUL Labs, Inc.

10.    Through years of research and over a billion dollars invested domestically, JLI has become one of the world's leading ENDS companies.

### 1.    JLI's History

11.    JLI was founded and incorporated in 2007 with the goal of transitioning the world's billion adult smokers away from combustible cigarettes.[1]  Use of combustible cigarettes remains the leading cause of preventable death in the world and cigarettes are widely acknowledged to kill up to or more than 50% of their long-time users.[2]

12.    When JLI was founded, the health hazards of smoking combustible cigarettes were well understood.  Smoking was and still is the number one cause of preventable death in the U.S.  *See Health Risks of Smoking Tobacco*, American

---

[1]  As described more fully in the remaining paragraphs in this Section, JLI began as a company called "Ploom."  Ploom was later renamed to "PAX Labs, Inc.," and PAX Labs, Inc. was later renamed to "JUUL Labs, Inc."

[2]  *See Tobacco: Key Facts*, World Health Organization (May 24, 2023), https://www.who.int/news-room/fact-sheets/detail/tobacco ("Tobacco kills up to half of its users.").

Cancer Society (May 25, 2023), https://www.cancer.org/cancer/cancer-causes/tobacco-and-cancer/health-risks-of-smoking-tobacco.html.    Smoking not only steals valuable years of life, and severely impacts quality of life for smokers and those around them, but also has a significant economic cost.  The Centers for Disease Control and Prevention estimates that "[c]igarette smoking cost the United States more than $600 billion in 2018," including "[m]ore than $240 billion in healthcare spending, [n]early $185 billion in lost productivity from smoking-related illnesses and health conditions in lost productivity, [and] [n]early $180 billion in lost productivity from smoking-related premature death . . . ."  *See Smoking & Tobacco Use: Economic Trends in Tobacco*," Centers for Disease Control and Prevention (May 25, 2023), https://www.cdc.gov/tobacco/data_statistics/fact_sheets/economics/econ_facts/index.htm.

13.    After studying Product Design in graduate school at Stanford University, JLI's founders, James Monsees and Adam Bowen, applied their knowledge of design and engineering to the challenge of developing an alternative to combustible cigarettes through ENDS products.  Both smokers at the time, they experienced a lack of compelling alternatives to smoking for adults who wanted to enjoy nicotine but wanted to move away from traditional combustible cigarettes.

14.    ENDS technology represented a potential alternative for reducing the exposure of adult smokers—and those around them—to the toxic compounds released by use of combustible cigarettes.  ENDS products deliver nicotine, but do so without burning tobacco and are thus noncombustible nicotine products.  Studies have shown that switching from cigarettes to ENDS products can reduce exposure to certain toxic byproducts of smoking traditional cigarettes by up to 99%.  Former FDA Commissioner Scott Gottlieb, M.D. explained that "it's primarily the combustion, which releases thousands of harmful constituents into the body at

dangerous levels, that kills people." *See* Statement from FDA Commissioner Scott Gottlieb, M.D., FDA Newsroom (Sep. 11, 2018), https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-new-steps-address-epidemic-youth-e-cigarette-use.

15.    While promising, initial ENDS products showed challenges to durably switching adult smokers' consumption of combustible cigarettes.  Several factors contributed to low switching rates with early non-combustible devices, including poor nicotine delivery, unreliability, poor device quality, form factor issues, and complexity and maintenance required for some devices.  Early generation "cig-a-like" products, typically cylindrical in design like a cigarette, failed to break from traditional cigarette iconography, often had poor nicotine delivery that failed to match the experience of consuming a combustible cigarette, and were either not rechargeable or suffered from inconvenient cartridge coupling mechanisms, inconsistent operation, etc.  Tank systems, including cartomizers and "mods," were bulky, complicated, and impractical—requiring user modifications and refilling with nicotine e-liquids.[3]  Such cartomizers and mods were difficult to use, troublesome to refill with e-liquid, leaky, bulky, and inconvenient.[4]

---

[3]  *See* Jean-Francois Etter, *Electronic Cigarettes: A Survey of Users*, 10 BMC Pub. Health 231 (2010); *see also* Carla J. Berg, et. al., *Attitudes Toward E-Cigarettes, Reasons for Initiating E-Cigarette Use and Changes in Smoking Behavior After Initiation: A Pilot Longitudinal Study of Regular Cigarette Smokers*, 4 Open J. Preventive Med. 789 (2014).

[4]  *See* Neil McKeganey & Tiffany Dickson, *Why Don't More Smokers Switch to Using E-Cigarettes: The Views of Confirmed Smokers*, 14 Int'l J. Envtl. Res. Pub. Health 647 (2017); Amy McQueen, Stephanie Tower & Walton Sumner, *Interviews with "Vapers": Implications for Future Research with Electronic Cigarettes*, 13 Nicotine Tobacco Res. 860 (2011); Jean-Francois Etter & Chris Bullen, *Electronic Cigarette: Users Profile, Utilization, Satisfaction and Perceived Efficacy*, 106 Addiction 2017 (2011).

16.     Most early alternatives, including early e-cigarettes, continued the combustible cigarette iconography in that they were "either small and round, designed to look and feel as much as possible like a cigarette," or were inaccessible to many as they were "huge, assembled from many parts, and spectacularly complicated."  *See* David Pierce, *This Might Just Be the First Great ECIG*, Wired (Apr. 21, 2015), https://www.wired.com/2015/04/pax-juul-ecig/.  During the course of their Masters' thesis project in product design, James and Adam developed prototypes of a non-combustible nicotine delivery system to address these shortcomings.

17.     After graduate school, James and Adam started a company called "Ploom" to continue developing and commercializing tobacco-alternative devices. The original Ploom device was a butane-powered vaporizer that heated tobacco material sufficiently to create a nicotine-containing inhalable aerosol while using a sufficiently low temperature to avoid igniting the tobacco material, a type of system referred to as "heat-not-burn."  The Ploom device included a button-actuated heater and removable mouthpiece.  In 2015, Ploom changed its name to PAX Labs, Inc. ("Pax").  James and Adam, through Pax, continued to innovate new and better designs for non-combustible nicotine delivery products.

18.     In 2015, Pax revolutionized the market for ENDS products with the release of its signature product, the JUUL electronic nicotine delivery system (the "JUUL System").  Through its many innovations in industrial design, technical engineering, and chemistry, the JUUL System disrupted the stagnant and failing category of non-combustible alternatives to combustible cigarettes.  Adult smokers had experimented with predecessor e-cigarette and electronic smoking alternative products as those products were introduced—going back at least to the 1980s. However, none of those products ever gained significant traction.  JLI's deliberate departure from early-generation technology changed that pattern, and the JUUL

System's arrival gave adult smokers the first viable alternative to traditional cigarettes.

19.     On June 30, 2017, Pax was renamed JUUL Labs, Inc. JLI then spun off non-nicotine products other than the JUUL System, as well as related personnel and resources, into a new, distinct corporate entity named Pax Labs, Inc. ("New Pax"). New Pax focuses on other vaporization fields that do not involve nicotine.

## 2.     The JUUL System

20.     The JUUL System is a closed, cartridge-based product that uses precision heating technology to aerosolize and deliver nicotine without combustion. It was designed to break away from the "round white stick" iconography associated with smoking and used a simple interface requiring no buttons, switches, or complex manipulation, coupled with an e-liquid formulation and carefully crafted and engineered internal architecture to deliver a combustible cigarette-like experience. The transformative design and operation of the JUUL System were unique advancements over previous, much less successful ENDS products that were difficult to use, unsatisfying, and/or inconsistent in their delivery of aerosolized nicotine. As a result of its ease of use and satisfying and reliable performance, the JUUL System quickly gained recognition among adult smokers. It has been and continues to be one of the best-selling ENDS products in the United States.

21.     The JUUL System comprises three primary and proprietary components: (i) a device body containing a rechargeable battery, control circuitry, and a receptacle for a cartridge; (ii) a pre-filled, non-refillable cartridge (branded as a "JUULpod") that is specifically designed to be inserted into the cartridge receptacle on the device body, has a resistive heater-based atomizer, and is prefilled with a proprietary nicotine e-liquid formulation; and (iii) a charging dock that is specifically designed for charging the device body. When a user inhales through the mouthpiece of a JUULpod that has been inserted into the cartridge receptacle of the

1   JUUL device body, the device rapidly heats to vaporize the nicotine e-liquid, which

2   recondenses to generate an aerosol that is ultimately inhaled by the user.

3          22.      By way of illustration, the JUUL System is generally shown below:

**JUUL Device**



**JUULpod**



**JUUL System**



23.     The JUUL System looks simple, yet distinctive.  It employs a unique form factor that represents a stark departure from prior conventional thinking about ENDS product design and from contemporary industry norms, abandoning traditional cigarette designs altogether, including the cylindrical shape.  Its innovative design distinguishes it from the "round white stick" iconography found in both traditional combustible cigarettes and from previous alternative e-cigarettes, further helping smokers leave combusted cigarettes behind.  JLI was immediately praised for "strong design savvy" and for creating a "beautiful" product.  *See* David Pierce, *This Might Just Be the First Great ECIG*, Wired (Apr. 21, 2015), https://www.wired.com/2015/04/pax-juul-ecig/; Tom Miller, *Pioneers: Adam Bowen and James Monsees*, Time Magazine (Sep. 16, 2019), https://time.com/collection/100-most-influential-people-2019/5567701/adam-bowen-james-monsees/.

24.     A JUULpod cartridge consists of two basic parts: a cartridge and a cap, which is removed from the cartridge prior to use.  As shown in the example JUULpods below, the JUULpod cartridge has an overall rectangular shape—a deliberate departure from the cylinder-shaped cartridges that came before it.



25.     Moreover, looking at the JUULpod cartridge with the cap removed (as shown below), more than one-half of the cartridge is light transmissive to allow a

user to view the nicotine e-liquid remaining in the tank as well as other internal components, even when inserted fully into the JUUL device body.  Older cartridge



designs were typically opaque at the distal end, which connected to the device body, and were often made of metal.

26.     The JUUL System has attained tremendous commercial success and acclaim, reportedly garnering around 60-70% of the overall tracked e-cigarette market in the U.S. in the years following its launch.

27.     JLI has since further innovated and created the JUUL2 System.  Like the JUUL System, the JUUL2 System is comprised of three primary and proprietary components: (i) a device body containing a rechargeable battery, control circuitry, and a receptacle for a cartridge; (ii) a pre-filled, non-refillable cartridge (branded as a "JUUL2 pod") that is specifically designed to be inserted into the cartridge receptacle on the device body, has a resistive heater-based atomizer, and is prefilled with a proprietary nicotine e-liquid formulation; and (iii) a charging dock that is

specifically designed for charging the device body. The JUUL 2 System is designed, developed, and assembled in the United States, and, pending US FDA approvals, currently exported and sold outside of the United States.

28.    JLI is committed to providing quality products that perform consistently to JLI's specifications. JLI continues to invest in creating and maintaining strict manufacturing and quality standards for its products and relies on multiple safeguards, testing standards, and quality controls.

### 3.    VMR

29.    VMR Products LLC is a privately held corporation organized and existing under the laws of the state of Florida, with its principal place of business at 1000 F Street NW Washington, D.C. 20004. VMR Products LLC is a wholly owned subsidiary of JUUL Labs, Inc.

30.    VMR was an early innovator of insertable cartridge or "pod-based" vaporizer products. JLI acquired the company and its intellectual property in October 2018.

### B.    Defendants Glas, Inc. and Glas, LLC

31.    On information and belief, Glas, Inc. is a corporation organized under the laws of Delaware, with a principal place of business at 2127 Westwood Boulevard, Suite 200, Los Angeles, CA 90025. Ex. A (https://bizfileonline.sos.ca.gov/search/business search result for "Glas, Inc."); Ex. B (Statement and Designation by Foreign Corporation filed with the Secretary of State of the State of California on February 8, 2019); Ex. C (Statement of Information filed with the Secretary of State of the State of California on March 15, 2022); Ex. D (United State Securities and Exchange Commission, Form D, Notice of Exempt Offering of Securities filed on March 20, 2019).

32.    On information and belief, Glas, LLC is a California limited liability company with a principal place of business at the same address. Ex. E

(https://bizfileonline.sos.ca.gov/search/business search result for "Glas, LLC"); Ex. F (Article of Organization of a Limited Liability Company (LLC) filed with filed with the Secretary of State of the State of California on December 30, 2013); Ex. G (Statement of Information filed with the Secretary of State of the State of California on March 30, 2021); Ex. H (Statement of Information filed with the Secretary of State of the State of California on March 15, 2022).

33.     On information and belief, there is a relationship between Defendants Glas, Inc. and Glas, LLC.  It appears that Glas, Inc. represents the operating company, and Glas, LLC is used as a trademark-holding entity, but there may be other aspects to the corporate relationship.  By way of example, Exhibit I includes a shipping label and receipt for a domestic purchase of the Glas System, in which the top left of the shipping label lists "Glas, Inc." and the top left of the packing slip lists "Glas, LLC," indicating that Glas, LLC may be involved in infringement of the Asserted Patents as well:

Ex. I (Glas System purchase photographs).



34.     As set forth below, on information and belief, Defendants, directly or indirectly, make in the United States, use in the United States, import into the United States, offer to sell and sell within the United States, vaporizer devices, cartridges used therewith (sometimes referred to as "pods") that contain e-liquid nicotine formulations, and components of such devices and cartridges (cartridge housings, heater components (sometimes referred to as atomizers), chargers, batteries), and subassemblies of the foregoing that infringe the Asserted Patents.

35.     The products accused of infringement include the Glas Device and Glas Pods (collectively "Glas System"), both individually and in combination, as well as any other products which Glas may be developing or preparing for commercialization in the U.S. market that infringe the Asserted Patents. Ex. J (https://glas.com/); Ex. K (https://glas.com/collections/device); Ex. L (https://glas.com/collections/pods).

36.     For example, below are photographs of the products at issue, including the Glas System (Glas Device plus the inserted Glas Pods) on the left, and two un-inserted Glas Pods on the right, from Glas's website:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18




Ex. J (https://glas.com/).

     37.     On information and belief, Glas sells the accused Glas Device and the accused Glas Pods separately, however, it provides instructions with both the Glas Device and Glas Pods explaining how to use the system by first removing the colored cap from the pods and thereafter placing the pods into the device. *See, e.g.*, Ex. M (https://glas.com/pages/glassdevice and photographs of Glas Experience Guide).

     38.     As shown in the example JUULpods and in a domestically purchased Glas System provide below, the Glas Pods are highly similar to the JUULpods. By way of example, the Glas Pods have an overall rectangular shape with a non-opaque

16

body having a volume for holding e-liquid, a mouthpiece at one end of the Glas Pods, and electrical contacts on an opposing end of the Glas Pods. The Glas Pods also have, *inter alia*, a heating element, a wick, and an inhalation tube. *See, e.g.*, https://glas.com/pages/glassdevice; Ex. M (https://glas.com/pages/glassdevice and photographs of Glas Experience Guide); Ex. N (Glas System purchase photographs).

**JUULpods**                           **Glas Pods**



39. As shown in the example JUUL System and in a domestically purchased Glas System provided below, the Glas Device is abundantly similar to the JUUL Device. On information and belief, the Glas Device has a battery portion with an outer shell, a chamber in which the Glas Pod is inserted into, a window in the outer shell, and a battery. *See, e.g.*, Ex. M (https://glas.com/pages/glassdevice and photographs of Glas Experience Guide); Ex. N (Glas System purchase photographs).

| JUUL System | Glas System |
|:---:|:---:|
|  |  |

## III.   JURISDICTION AND VENUE

40.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

41.     Venue is proper in this district with respect to Defendants under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).  On information and belief, Defendants have committed acts of infringement in this District, directly and/or through intermediaries, by, among other things, making, using, offering to sell, selling, and/or importing products and/or services that infringe the Asserted Patent, as alleged herein.

42.     On information and belief, Defendants' principal place of business is in this judicial district.  Defendants' website states that Defendant is "[b]ased in Los Angeles."  Ex. O (https://glas.com/pages/about).  On information and belief, the

majority, if not all, of Defendants' employees and relevant witnesses for this patent infringement action are located in this judicial district. Defendants' registration with the California Secretary of State lists 2127 Westwood Boulevard, Suite 200, Los Angeles, CA 90025, as its "principal address" and "mailing address." Exs. A and E (https://bizfileonline.sos.ca.gov/search/business entries for "Glas, Inc.," and "Glas, LLC"). Defendants also list the same address on their webpage as the location for product returns. Ex. P (https://glas.com/pages/terms-conditions).

43.   Defendants also have a designated agent for service of process in this district. Exs. A and E (https://bizfileonline.sos.ca.gov/search/business entries for "Glas, Inc.," and "Glas, LLC" listing as registered agent, Kevin Higgins, 2127 Westwood Blvd. Ste. 200, Los Angeles, CA 90025).

44.   This Court also has personal jurisdiction over Defendants for the reasons above.

## IV.   THE TECHNOLOGY AND PRODUCTS AT ISSUE

### A.   Background of the Technology

45.   The technology at issue generally relates to the design and operation of vaporizer devices, also known as ENDS devices, and cartridges, used therewith, that contain e-liquid nicotine salt formulations.

46.   Nicotine liquid-based ENDS products generally vaporize a liquid solution containing nicotine (also called e-liquid) and permit the user to inhale recondensed droplets of that solution as an aerosol. An e-liquid based ENDS product typically includes a storage compartment that holds the liquid nicotine solution, a heating element that vaporizes the liquid to generate an aerosol, and a battery and circuitry to power and operate the heating element.

### B.   Products At Issue

47.   The products at issue are vaporizer devices such as nicotine delivery systems (ENDS), cartridges used therewith, and components of such devices and

cartridges (cartridge housings, heater components (sometimes referred to as atomizers), chargers, batteries), and subassemblies of the foregoing.

## V. THE ASSERTED PATENTS

48. Plaintiffs assert two patents in this Complaint: the '722 patent and the '981 patent, each of which is briefly discussed below.

### A. The '722 Patent

49. U.S. Patent No. 11,134,722 was duly and lawfully issued by the United States Patent and Trademark Office on October 5, 2021 to VMR Products LLC.

50. The '722 patent is set to expire on November 12, 2034.

51. The '722 patent is titled "Vaporizer"; names Jan Andries Verleur, Dan Recio, Yifeng Lu, Yinjun Zhang, Arturo Fajardo, and Hans Verleur as co-inventors; and issued from U.S. Patent Application No. 16/119,359, which was filed on August 31, 2018. The '722 patent is a continuation of U.S. Patent Application No. 14/539,801, filed on November 12, 2014 (now U.S. Patent No. 10,085,481). The '722 patent claims priority to at least U.S. Provisional Application No. 62/015,148, which was filed June 20, 2014, U.S. Provisional Application No. 61/937,851, which was filed February 10, 2014; and U.S. Provisional Application No. 61/903,344, which was filed November 12, 2013.

52. A true and correct certified copy of the '722 patent is attached as Exhibit Q.

53. A true and correct copy of the certified patent assignment records from the named inventors to VMR Products LLC. is attached as Exhibit R. As shown therein, the named inventors assigned their interest to each of the original patent applications which ultimately led to the issuance of the '722 patent. In particular the named inventors assigned their interest in U.S. Provisional Application No. 62/015,148, U.S. Provisional Application No. 61/937,851, and U.S. Provisional Application No. 61/903,344 (to which the '722 patent claims priority) to VMR

Products LLC in an assignment executed June 23, 2014 (Reel/Frame 051472/0865), in an assignment executed on February 11, 2014 (Reel/Frame 051472/0858), and in an assignment executed on November 19, 2023 (Reel/Frame 051472/0851), respectively.

**B.    The '981 Patent**

54.    U.S. Patent No. 11,606,981 was duly and lawfully issued by the United States Patent and Trademark Office on March 21, 2023 to VMR Products LLC.

55.    The '981 patent is set to expire on March 22, 2034.

56.    The '981 patent is titled "Vaporizer"; names Jan Andries Verleur, Dan Recio, Yifeng Lu, Yinjun Zhang, Arturo Fajardo, and Hans Verleur as co-inventors; and issued from U.S. Patent Application No. 17/095,567, which was filed on November 11, 2020. The '981 patent is a continuation of U.S. Patent Application No. 14/201,267, filed on March 7, 2014 (now U.S. Patent No. 10,980,273), which is a continuation of U.S. Patent Application No. 14/196,729, filed on March 4, 2014 (now U.S. Patent No. 10,039,321). The '981 patent claims priority to at least U.S. Provisional Application No. 61/937,851, which was filed February 10, 2014 and U.S. Provisional Application No. 61/903,344, which filed November 12, 2013.

57.    A true and correct certified copy of the '981 patent is attached as Exhibit S.

58.    A true and correct copy of the certified patent assignment records from the named inventors to VMR Products LLC. is attached as Exhibit T. As shown therein, the named inventors assigned their interest to each of the original patent applications which ultimately led to the issuance of the '981 patent. In particular the named inventors assigned their interest in U.S. Patent Application No. 14/196,729 (to which the '981 patent claims priority to as a continuation) to VMR Products LLC in an assignment executed on March 7, 2014 (Reel/Frame 058199/0578) and to U.S. Provisional Application No. 61/937,851 and U.S. Provisional Application

No. 61/903,344 (to which the '981 patent claims priority to) to VMR Products LLC in an assignment executed on February 11, 2014 (Reel/Frame 058199/0375) and in an assignment executed on November 19, 2013 (Reel/Frame 058199/0240), respectively.

## VI.    DEFENDANTS' INFRINGEMENT OF THE ASSERTED PATENTS

59.    Plaintiffs assert two grounds of infringement by Defendants, based on the two Asserted Patents.

### A.    Count One — Infringement of United States Patent No. 11,134,722

60.    Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as fully set forth herein.

61.    Upon information and belief, Defendants have infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claims 1, 3, 5, 7-9, 10, 11-14, 15, and 16-21 of the '722 patent by directly or indirectly making, using, selling, offering for sale in, and/or importing into the United States the products at issue.

62.    An exemplary claim chart comparing independent claims 1, 10, and 15 of the '722 patent to an exemplary product at issue (the Glas System) is attached as Exhibit U.  On information and belief, Defendants offers the Glas System for sale in the United States, including in this district, via the online store on their website.  *See, e.g.*, Ex. V (https://glas.com/collections/all-products).  In addition, on information and belief, Defendants make, use, sell, and offer for sale the accused products from their principal place of business in this district.

63.    In addition, on information and belief, Defendants either have already developed or are developing additional products, which on information and belief also infringe the '722 patent for similar reasons as identified in exemplary claim chart at Exhibit U.

64.     On information and belief, Defendants also indirectly infringe the '722 patent by inducing and/or contributing to infringement.  On information and belief, Defendants have had and have actual knowledge of, or were willfully blind to, the '722 patent, including through at least: (1) the marking of JUUL Device and/or JUULpod products with the number of the '722 patent and the listing of the number of the '722 patent on JLI's website in connection with such products, *see, e.g.*, https://www.juullabs.com/us-and-international-patents/; (2) the filing of this Complaint and the companion action in the International Trade Commission also detailing allegations of infringement of the Asserted Patent against Defendants, and (3) Defendants' full access to study Plaintiffs' public IP portfolio, including their patents and pending applications.

65.     On information and belief, Defendants knowingly induced, induce, and/or contribute to direct infringing acts by others with specific intent to encourage infringement.   For example, Defendants actively induce customers' direct infringement by contracting with and encouraging distribution partners, contractors, retailers, and/or customers to make, use, offer to sell, sell, and import in the United States products that infringe the Asserted Patent. Ex. J (https://glas.com/); Ex. K (https://glas.com/collections/device); Ex.  L  (https://glas.com/collections/pods); Ex. M (https://glas.com/pages/glassdevice and photographs of Glas Experience Guide);     Ex.     O     (https://glas.com/pages/about);     Ex.     W (https://glas.com/pages/frequently-asked-questions);               Ex.               X (https://glas.com/pages/using-my-glas-device);               Ex.               Y (https://glas.com/pages/device-issues); Ex. Z (https://glas.com/pages/pod-basics-issues);     Ex.     AA     (https://glas.com/pages/our-technology);     Ex.     BB (https://nicotineinsider.com/2025/06/26/the-right-stuff-glas-focuses-on-pmta-process/).

66.    Defendants knew and know, or should have known and should know, that these acts directly infringe the Asserted Patent because of, for example, the infringement allegations and evidence provided in connection with this Complaint, the other aforementioned complaints, and evidence and allegations therein.

67.    On information and belief, Defendants induce infringement of the '722 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe, literally or under the doctrine of equivalents, the '722 patent.  On information and belief, the products at issue are specially designed to contain features that infringe the '722 patent, and the products at issue have no substantial uses other than ones that infringe the '722 patent.  On information and belief, Defendants actively promote the sale, use, and importation of the products at issue in marketing materials, technical specifications, data sheets, webpages, press releases, and user manuals, as well as through their sales and distribution channels that encourage infringing sales, offers to sell, and importation of the products at issue.  Through these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the '722 patent.  On information and belief, Defendants continue to engage in these activities with knowledge of the '722 patent and knowledge that the induced acts constitute infringement.

68.    On information and belief, Defendants also contribute to infringement of the Asserted Patent under 35 U.S.C. § 271(c) by providing or selling the products at issue to others, including the Glas System, the Glas Device, and the Glas Pods.  The products at issue are specially designed and made for use in an infringing manner and are not staple articles of commerce suitable for any substantial non-infringing use.  On information and belief, Defendants continue to engage in these activities with knowledge of the Asserted Patent and knowledge that their acts contribute to infringement.

69.     On information and belief, Defendants recognized the power of Plaintiffs' innovations and the disruption to their core business, and willfully designed their products to infringe the Asserted Patents.  Defendants had full access to Plaintiff's public patent portfolio including its patents and pending applications.  Plaintiff is therefore entitled to the full range of legal and equitable relief, to remedy Defendants' willful infringement and other conduct, and a permanent injunction to prevent future infringement.

**B.      Count Two — Infringement of United States Patent No. 11,606,981**

70.     Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as fully set forth herein.

71.     Upon information and belief, Defendants have infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claims 1, 2, 5, 6, 8, 9, 10, 11, 13, 14-16, 17, and 18 of the '981 patent by directly or indirectly making, using, selling, offering for sale in, and/or importing into the United States the products at issue.

72.     An exemplary claim chart comparing independent claims 1, 10, and 15 of the '981 patent to an exemplary product at issue (the Glas System) is attached as Exhibit CC.  On information and belief, Defendants offers the Glas System for sale in the United States, including in this district, via the online store on their website.  *See, e.g.*, https://glas.com/collections/all-products.  In addition, on information and belief, Defendants make, use, sell, and offer for sale the accused products from their principal place of business in this district.

73.     In addition, on information and belief, Defendants either have already developed or are developing additional products, which on information and belief also infringe the '981 patent for similar reasons as identified in exemplary claim chart at Exhibit CC.

74.    On information and belief, Defendants also indirectly infringe the '981 patent by inducing and/or contributing to infringement.  On information and belief, Defendants have had and have actual knowledge of, or were willfully blind to, the '981 patent, including through at least: (1) the marking of JUUL Device and/or JUULpod products with the number of the '981 patent and the listing of the number of the '981 patent on JLI's website in connection with such products, *see, e.g.*, https://www.juullabs.com/us-and-international-patents/; (2) the filing of this Complaint and the companion action in the International Trade Commission also detailing allegations of infringement of the Asserted Patent against Defendants, and (3) Defendants' full access to study Plaintiffs' public IP portfolio, including their patents and pending applications.

75.    On information and belief, Defendants knowingly induced, induce, and/or contribute to direct infringing acts by others with specific intent to encourage infringement.    For example, Defendants actively induce customers' direct infringement by contracting with and encouraging distribution partners, contractors, retailers, and/or customers to make, use, offer to sell, sell, and import in the United States products that infringe the Asserted Patent.  Ex. J (https://glas.com/); Ex. K (https://glas.com/collections/device);   Ex.   L   (https://glas.com/collections/pods); Ex. M (https://glas.com/pages/glassdevice and photographs of Glas Experience Guide);     Ex.     O     (https://glas.com/pages/about);     Ex.     W (https://glas.com/pages/frequently-asked-questions);        Ex.        X (https://glas.com/pages/using-my-glas-device);        Ex.        Y (https://glas.com/pages/device-issues); Ex. Z (https://glas.com/pages/pod-basics-issues);    Ex.    AA    (https://glas.com/pages/our-technology);    Ex.    BB (https://nicotineinsider.com/2025/06/26/the-right-stuff-glas-focuses-on-pmta-process/).

76.     Defendants knew and know, or should have known and should know, that these acts directly infringe the Asserted Patent because of, for example, the infringement allegations and evidence provided in connection with this Complaint, the other aforementioned complaints, and evidence and allegations therein.

77.     On information and belief, Defendants induce infringement of the '981 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe, literally or under the doctrine of equivalents, the '981 patent.  On information and belief, the products at issue are specially designed to contain features that infringe the '981 patent, and the products at issue have no substantial uses other than ones that infringe the '981 patent.  On information and belief, Defendants actively promote the sale, use, and importation of the products at issue in marketing materials, technical specifications, data sheets, webpages, press releases, and user manuals, as well as through their sales and distribution channels that encourage infringing sales, offers to sell, and importation of the products at issue.  Through these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the '981 patent.  On information and belief, Defendants continue to engage in these activities with knowledge of the '981 patent and knowledge that the induced acts constitute infringement.

78.     On information and belief, Defendants also contribute to infringement of the Asserted Patent under 35 U.S.C. § 271(c) by providing or selling the products at issue to others, including the Glas System, the Glas Device, and the Glas Pods.  The products at issue are specially designed and made for use in an infringing manner and are not staple articles of commerce suitable for any substantial non-infringing use.  On information and belief, Defendants continue to engage in these activities with knowledge of the Asserted Patent and knowledge that their acts contribute to infringement.

79.     On information and belief, Defendants recognized the power of Plaintiffs' innovations and the disruption to their core business, and willfully designed their products to infringe the Asserted Patents.  Defendants had full access to Plaintiff's public patent portfolio including its patents and pending applications. Plaintiff is therefore entitled to the full range of legal and equitable relief, to remedy Defendants' willful infringement and other conduct, and a permanent injunction to prevent future infringement.

## VII.   DEMAND FOR JURY TRIAL

80.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all issues so triable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1. a judgment that Defendants have infringed the Asserted Patents;

2. a judgment that Defendants' infringement of the Asserted Patents is willful;

3. damages adequate to compensate Plaintiffs for the Defendants' infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

4. entry of a permanent injunction enjoining Defendants from directly or indirectly making, using, selling, offering to sell, and/or importing the products at issue, and/or otherwise infringing, or inducing or contributing to the infringement of the Asserted Patents;

5. pre-judgment interest;

6. post-judgment interest;

7. a declaration that this action is exceptional pursuant to 35 U.S.C. § 285, and an award to Plaintiffs of its attorneys' fees, costs, and expenses incurred in connection with this action; and

8. such other relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

JLI hereby demands a trial by jury on all issues triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: September 30, 2025      Respectfully submitted,

By:    /s/ *Iman Lordgooei*

Iman Lordgooei
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel.: (415) 875-6600

Kevin P.B. Johnson
Victoria F. Maroulis
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel.: (650) 801-5000

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, a true and correct copy of the foregoing Amended Complaint was filed electronically using the Court's CM/ECF system, which shall send notifications of such filing to all counsel of record. Any counsel of record who has not consented to electronic service through the Court's CM/ECF system will be served by electronic mail.

By:    /s/ *Iman Lordgooei*

Iman Lordgooei (SBN 251320)